*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GARY OLSZEWSKI,

        Plaintiff-Appellant,

v

EMILY G. ERDMAN and RACHEL L. ERDMAN,
as co-trustees of the KATHY J. ERDMAN TRUST,

        Defendants-Appellees.

UNPUBLISHED
May 08, 2025
1:07 PM

No. 369659
Wexford Probate Court
LC No. 2023-001230-CZ

Before: BORRELLO, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

In this dispute over the proceeds from the sale of decedent Kathy J. Erdman's house in Cadillac, Michigan, plaintiff appeals as of right the probate court's order dismissing the complaint for improper venue. For the reasons set forth in this opinion, we reverse and remand for further proceedings.

## I. BACKGROUND

This action concerns real property located in Cadillac, Michigan previously owned by the decedent.[1] Plaintiff resided on the property with the decedent for over six months. Prior to that, plaintiff lived with the decedent at her former residence in Lowell, Michigan. The decedent created a revocable living trust on April 17, 2018, which states that her Lowell residence would be distributed to plaintiff upon her death. The trust document indicates that the decedent was a resident of Kent County, Michigan, and that the trust is governed by the laws of the State of Michigan. It is also noted that the trust is exempt from registration as permitted by State law. At some point, the decedent sold the Lowell property and purchased the Cadillac property. While residing with the decedent at the Cadillac property, plaintiff and the decedent worked on improving

---

[1] According to plaintiff's affidavit, the home may have technically been owned by the decedent's trust. However, conclusive resolution of this detail is not necessary to resolve the present appeal.

the property with the alleged intention of selling it. Both parties reportedly contributed to the costs of the improvements.

On March 8, 2023, plaintiff and the decedent entered into a contract that was handwritten, signed by both parties, and notarized in Wexford County. Some portions of the contract are difficult to read; however, it generally appears to provide plaintiff with a partnership interest in real estate investments in exchange for $250,000 from the proceeds of selling the Cadillac property, in consideration of plaintiff's general contracting work on that property. The work covered by the contract included permits, tile, flooring, cement staining, foundation work, wood trim, wood ceilings, painting, basement rough-in, and subcontractor payments. The contract also stated, "No Claim on [L]owell School House investm." It is noted that plaintiff's builder's license was in escrow at the time, as he was managing a restaurant. Plaintiff further indicated that the mechanical and heating work was contracted in writing through Advanced Mechanical, and the electrical work was contracted in writing through Taylor Electric. According to the complaint, the decedent passed away on March 25, 2023, prior to the sale of the Cadillac property. The provision in the trust concerning the Lowell property was reportedly never modified or updated. Plaintiff filed a claim against the decedent's estate for $250,000, which was disallowed.

Plaintiff initiated this action in the Wexford Probate Court, alleging breach of contract and conversion against the decedent's daughters, Emily Erdman and Rachel Erdman, who served as co-trustees of the decedent's trust. The complaint stated that plaintiff sought to "determine an interest in land located in Wexford County, Michigan," and indicated that the "facts and circumstances giving rise to this Complaint occurred in Kent County, Michigan." It was noted that plaintiff and the decedent had entered into a contract prior to the decedent's death, stipulating that plaintiff would receive a percentage of the Cadillac property in exchange for the Lowell property as identified in the decedent's trust, along with investments made in the Cadillac property. The defendants were accused of breaching this contract or converting the proceeds of the Cadillac property by not paying the outstanding contract balance to plaintiff. The complaint also indicated that plaintiff resides in Florida.

The co-trustees filed for summary disposition under MCR 2.116(C)(8) and (C)(10). In relation to the present appeal, the co-trustees asserted that the venue in the Wexford Probate Court was improper because the trust was administered in Cook County, Illinois, where both co-trustees reside. They further claimed that the trust was not registered as it was exempt from registration by its own terms. Additionally, the co-trustees remarked that plaintiff had acknowledged his residency in Florida.

In response, plaintiff argued that the co-trustees had not properly changed the principal place of administration for the trust as mandated by statute. Plaintiff contended that the principal place of administration for the trust at the time of the decedent's death was Wexford County, Michigan, and that it remained so due to the co-trustees' failure to comply with statutory requirements for changing the place of administration. Plaintiff also argued that venue for proceedings involving an unregistered trust is appropriate in a place where the trust could have been registered, claiming that this trust could have been registered in Wexford County. Furthermore, plaintiff stated that he "completed work at the trust-owned property for his

occupancy and use while he and the Settlor lived on the property, making his work (and the contract between him and Ms. Erdman) exempt from the Builder's Act."

The probate court conducted a hearing and received oral arguments from both parties. At the conclusion of the hearing, the court ruled from the bench, determining that the matter would be dismissed due to improper venue in Wexford County. The court reasoned that the trust was not registered and that, in accordance with MCL 700.7209, the principal place of administration was Chicago, where the co-trustees resided and maintained records associated with the trust. The probate court issued an order stating that the venue was improper, resulting in the dismissal of the complaint for the reasons detailed on the record. Plaintiff's subsequent motion for reconsideration was denied, leading to this appeal.

## II. STANDARD OF REVIEW

The "power to establish the venue for causes of action" rests with the Legislature, and venue is thus "controlled by statute in Michigan." *Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 624; 752 NW2d 37 (2008). Questions of statutory interpretation are reviewed de novo, but the trial court's ruling on a motion to change venue is reviewed for clear error. *Id*.

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Brown v Mayor of Detroit*, 478 Mich 589, 593; 734 NW2d 514 (2007). This Court begins by reviewing the language of the statute; if "the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute and judicial construction is not permissible." *Id*.

Regarding the clearly erroneous standard applicable to the trial court's ruling on venue, "[c]lear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Dimmitt & Owens*, 481 Mich at 624.

To the extent the trial court's ruling and the parties' arguments implicate issues concerning subject matter jurisdiction, this Court reviews the question whether a lower court has subject-matter jurisdiction de novo, as an issue of law. *Black v Cook*, 346 Mich App 121, 128; 11 NW3d 563 (2023). As this Court has explained:

> Subject-matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it. It is the abstract power to try a case of the kind or character of the one pending, but not to determine whether the particular case is one that presents a cause of action or, under the particular facts, is triable before the court in which it is pending. A court's subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint. If it is apparent from the allegations that the matter alleged is within the class of cases with regard to which the court has the power to act, then subject-matter jurisdiction exists. [*In re Eddins*, 342 Mich App 529, 538-539; 995 NW2d 604 (2022) (quotation marks and citations omitted).]

"Probate courts are courts of limited jurisdiction," and the "jurisdiction of the probate court is defined entirely by statute." *In re Wirsing*, 456 Mich 467, 472; 573 NW2d 51 (1998); see also Const. 1963, art. 6, § 15 ("The jurisdiction, powers and duties of the probate court and of the judges thereof shall be provided by law.").

## III. ANALYSIS

Plaintiff submitted a claim for $250,000 grounded in the contractual agreement with the decedent to the co-trustees of the decedent's trust. However, the co-trustees completely denied the claim. Following this rejection, plaintiff initiated legal proceedings in the Wexford Probate Court.[2] These factual circumstances implicate certain provisions within the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*.

"A claim that is disallowed in whole or in part by the trustee is barred to the extent not allowed unless the claimant commences a proceeding against the trustee not later than 63 days after the mailing of the notice of disallowance or partial allowance if the notice warns the claimant of the impending bar." MCL 700.7611(a). Subject to MCL 700.7611, a "claimant may commence a proceeding to obtain payment of a claim against the trust in a court where the trustee is subject to jurisdiction." MCL 700.7609(1)(b).

Under EPIC, the probate court[3] "has exclusive legal and equitable jurisdiction" of a "matter that relates to the settlement of a deceased individual's estate, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled out of state leaving an estate within the county to be administered," MCL 700.1302(a), as well as a "proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration,

---

[2] "Procedure in probate court is governed by the general rules set forth in chapter one and by the rules applicable to other civil proceedings set forth in chapter two, except as modified by the rules in [chapter 5]." MCR 5.001(A). In probate court, there "are two forms of action, a 'proceeding' and a 'civil action.' " MCR 5.101(A). Under MCR 5.101(C)(2), "[a]ny action filed by a claimant after notice that the claim has been disallowed" must be titled a civil action, "commenced by filing a complaint, and "governed by the rules applicable to civil actions in circuit court." For purposes of EPIC, however, a "proceeding" is defined to "include[] an application and a petition, and may be an action at law or a suit in equity." MCL 700.1106(u). EPIC also indicates that "[a] proceeding may be denominated a civil action under court rules." MCL 700.1106(u). This definition was previously contained in MCL 700.1106(t) before the recent amendments to the statute; the language of the definition was unchanged. See 2018 PA 555; 2024 PA 1. Accordingly, this action constitutes a "proceeding" for purposes of MCL 700.7611(a) ("A claim that is disallowed in whole or in part by the trustee is barred to the extent not allowed unless the claimant commences a proceeding against the trustee not later than 63 days after the mailing of the notice of disallowance or partial allowance if the notice warns the claimant of the impending bar.").

[3] For purposes of EPIC, "court" means "the probate court or, when applicable, the family division of circuit court." MCL 700.1103(k). Although this definition was previously located in subsection (j), the definition language was not changed in the recent amendment to this statute. See 2013 PA 157; 2024 PA 1.

distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary," 700.1302(b). With respect to a proceeding concerning a trust, the probate court's jurisdiction encompasses proceedings to "settle interim or final accounts," MCL 700.1302(b)(*iii*), proceedings to "[d]etermine a question that arises in the administration or distribution of a trust," MCL 700.1302(b)(*v*), and proceedings to "[d]etermine an action or proceeding that involves settlement of an irrevocable trust," MCL 700.1302(b)(*viii*). The probate court also has "exclusive legal and equitable jurisdiction" of a "proceeding to require, hear, or settle the accounts of a fiduciary and to order, upon request of an interested person, instructions or directions to a fiduciary that concern an estate within the court's jurisdiction." MCL 700.1302(d). The probate court "has exclusive jurisdiction of proceedings in this state brought by a trustee or beneficiary that concern the administration of a trust as provided in section 1302(b) and (d)." MCL 700.7203(1).

"In addition to the jurisdiction conferred by section 1302 and other laws, the [probate] court has concurrent legal and equitable jurisdiction to[,] . . . in regard to an estate of a decedent, protected individual, ward, or trust[,] . . . [h]ear and decide a contract proceeding or action by or against an estate, trust, or ward." MCL 700.1303(1)(i). The probate court "has concurrent jurisdiction with other courts of this state of other proceedings that involve a trust as provided in section 1303." MCL 700.7203(2).

At issue in this appeal is venue. MCL 700.7204(1) provides in relevant part as follows:

[V]enue for a proceeding involving a trust is as follows:

(a) For a proceeding under section 7203 involving a registered trust, in the place of registration.

(b) For a proceeding under section 7203 involving a trust not registered in this state, in any place where the trust properly could be registered and, if the trust is created by will and the estate is not yet closed, in the county in which the decedent's estate is being administered.

(c) As otherwise specified by court rule.

"A trust is registered by the filing of a statement that states the trustee's name and address and in which the trustee acknowledges the trusteeship." MCL 700.7210(1). There does not appear to be any dispute in this case that the trust was not registered; the trust instrument expressly states that the trust is exempt from registration. Thus, pursuant to MCL 700.7204(1)(b), venue is proper "in any place where the trust properly could be registered." The place where a trust may properly be registered is defined in MCL 700.7209. That statute provides as follows:

(1) The trustee of a trust that has its principal place of administration in this state may register the trust in the court at the place designated in the terms of the trust or, *if none is designated, then at the principal place of administration. For purposes of this article, the principal place of the trust's administration is the trustee's usual place of business where the records pertaining to the trust are kept or the trustee's residence if the trustee does not have such a place of business*. For

a corporate trustee, the usual place of business is the business location of the primary trust officer for the trust.

(2) For cotrustees, if not designated in the terms of the trust, the principal place of administration is 1 of the following:

(a) If there is only 1 corporate cotrustee, the corporate trustee's usual place of business.

(b) If there is only 1 professional fiduciary who is an individual and no corporate trustee, the professional fiduciary's usual place of business or residence.

(c) If neither subdivision (a) nor (b) applies, the usual place of business or residence of any of the cotrustees as agreed upon by them. [MCL 700.7209 (emphasis added).]

The trust instrument in this case did not designate a place to register the trust. Thus, the pertinent question becomes determining where the principal place of the trust's administration was located. In order to answer that question, we turn to MCL 700.7108, which provides, in relevant part as follows:

(1) Without precluding other means for establishing a sufficient connection with the designated jurisdiction, terms of a trust designating the principal place of administration are valid and controlling if any of the following apply:

(a) A trustee's principal place of business is located in or a trustee is a resident of the designated jurisdiction.

(b) A trust director's principal place of business is located in, or a trust director is a resident of, the designated jurisdiction.

(c) All or part of the administration occurs in the designated jurisdiction.

(2) A trustee is under a continuing duty to administer the trust at a place appropriate to its purposes, its administration, and the interests of the qualified trust beneficiaries.

(3) Without precluding the right of the court to order, approve, or disapprove a transfer, the trustee, in furtherance of the duty prescribed by subsection (2), may transfer the trust's principal place of administration to another state or to a jurisdiction outside of the United States.

(4) The trustee shall notify the qualified trust beneficiaries in writing of a proposed transfer of a trust's principal place of administration not less than 63 days before initiating the transfer. The notice of proposed transfer must include all of the following:

(a) The name of the jurisdiction to which the principal place of administration is to be transferred.

(b) The address and telephone number at the new location at which the trustee can be contacted.

(c) An explanation of the reasons for the proposed transfer.

(d) The date on which the proposed transfer is anticipated to occur.

(e) In a conspicuous manner, the date, not less than 63 days after the giving of the notice, by which a qualified trust beneficiary must notify the trustee in writing of an objection to the proposed transfer.

(5) The authority of a trustee under this section to transfer a trust's principal place of administration without the approval of the court terminates if a qualified trust beneficiary notifies the trustee in writing of an objection to the proposed transfer on or before the date specified in the notice.

Here, the probate court found that the co-trustees essentially attempted to transfer the trust's principal place of administration to Illinois but failed to comply with the notice requirements in MCL 700.7108. The probate court then reasoned as follows:

The trustees the trustees, the current co-trustees transferred the Principal Place of Administration um, to -- their transferred but did not comply with MCL 700.7108 subsections three through five.

The ah -- and I look at that section and I was like, in my own personal practice and and [sic] again this issue that you guys have raised here, never comes up. Okay? Ah, it never comes up. You guys dug it up and you raised it. But, it's not uncommon for Mom to die, ah, another child to become the successor, not live in this county and have somebody else suddenly just transfer it and register it someplace else. And I think that's that's [sic] probably what the trustee, I'm not gonna say that, that's what happened here, but probably what the trustee wants is that their kid, who becomes the Successor Trustee wherever they are. But that's where the principal place of residence ah Principal Place of Administration that a trust would be -- where the kids -- The trust is silent to it. It doesn't say that. Okay? Ah, and I can't really infer that that's what Mom intended. Ah, in this particular case, but I'm thinking generally my experience in dealing with trusts, this section has been brought to my attention by [plaintiff's counsel], never comes into play. Kids never say, we have to give 'em notice and transfer it to another county in the State of Michigan. Or to another state if kids happen to be in another state. And certainly these provisions make great sense when there's a corporate trustee. Make great sense when there's a corporate trustee, because ah Merrill Lynch is an example, has offices in every state. And they may have their Principal Place of Administration in Chicago. And if Merril [sic] Lynch becomes successor trustee, um we don't want beneficiaries having to go to Chicago from Michigan, or from Florida, from Connecticut just because Merrill Lynch happens to be the successor

trustee managing the trust out of Chicago. And so for Merrill Lynch to transfer the Principal Place of Administration, yeah, they gotta give notice to the -- and the statute says they gotta give notice to the qualified trust beneficiary so that a Qualified Trust Beneficiary has an opportunity to object.

And so, as a result that these co-trustees did not follow the statute and as a result, as a result a Qualified Trust Beneficiary may object to the transfer. This failure does not ah ah this failure to comply with the statute does not give a creditor, I don't believe it gives a creditor standing to object to the transfer of Principal Place of Administration. By definition the Principal Place of Trust Administration is Chicago. Here I have -- we're talking about trying to enforce a contract. I -- there was nothing else (inaudible) conversion. There's nothing about some other ah theory presented ah in the pleadings as to another basis for having an inheritance for distribution right in the trust that was raised in these pleadings.

And I do not find that the Plaintiff is a Qualified Trust Beneficiary because the Trust did ah give to him Lowell, but Lowell doesn't exist. Ah and that issue wasn't briefed for me and I . . . just don't find that he's a Qualified Trust Beneficiary.

For a proceeding involving a trust not registered in this state, venue is proper in any place where trust property could be registered. Trust property could be registered is pursuant to MCL 700.7204.

The trust does not designate where the trust shall be registered. The trust states that it is exempt from registration per MCL 700.7209. Registration is proper at the principal place ah of the trust administration as discussed previously, that place is Chicago.

Um, one moment, looking at MCL 700.7205, Declination of a Jurisdiction proceedings involving foreign involving foreign trusts, it says under subsection one, "If a party objects, the court shall not entertain a proceeding under section 7203 that involves a trust that is registered or that has its principal place of administration in another state, unless either of the following apply . . . and that was, a) 'all appropriate parties will not be bound by litigation in the courts of the state where the trust is registered or has its principal place of administration. b) 'The interest of justice would otherwise be seriously impaired.' "

And here ah, on the issues presented I find no reason why ah, the parties wouldn't be bound by litigation in the state of Illinois. And I do not see that the interest of justice would be seriously impaired.

Ah, there is no party in Michigan. Ah, the Plaintiff is in Florida. The co-trustees are in Chicago. Based on representations ah, by [defense counsel], the third trust beneficiary, Rob,[4] lives in Arizona.

And so, despite having spent time looking at your other arguments, I don't get to ponder those. The Court finds that that yes, the co-trustees did not follow the statute on Notification for Change, but Plaintiff does not have standing to object to that. Ah, he is not a qualified trust beneficiary, and therefore, venue is improper and as a result the ah complaint will be dismissed so that it can be properly filed in Illinois. [(second ellipsis in original).]

Based on this reasoning, it appears that the probate court found that the co-trustees had not followed the statutory procedures for transferring the trust's principal place of administration but that the trust's principal place of administration had nonetheless become Cook County, Illinois by default because that was where the co-trustees resided. The court's reasoning seemed to imply concerns about the convenience of the forum, although it did not clearly ground its decision on those concerns. The probate court also relied on MCL 700.7205(1), which provides as follows:

If a party objects, the court shall not entertain a proceeding under section 7203 that involves a trust that is registered or that has its principal place of administration in another state, unless either of the following applies:

(a) All appropriate parties could not be bound by litigation in the courts of the state where the trust is registered or has its principal place of administration.

(b) The interests of justice would otherwise be seriously impaired.

This Court addressed a similar factual scenario in *In re Stanley A Seneker Trust*, unpublished per curiam opinion of the Court of Appeals, issued February 26, 2015 (Docket No. 317003).[5] In that case, the decedent had established a trust in 1974, when he resided in Michigan, and he was the sole trustee of the trust. *Id*. at 1, 3. However, the decedent amended and completely restated the trust in 1997, by which time he had become a resident of Florida. *Id*. at 3. The preamble to the restated trust indicated that the decedent resided in Florida, and the amendment and restatement was prepared, executed, witnessed, and notarized in Florida. *Id*. The decedent also remained the sole trustee. *Id*. The decedent continued to reside in Florida until his death in 2012. *Id*. He also amended the trust multiple times, with each amendment occurring entirely in Florida and retaining the decedent as sole trustee. *Id*. The trust "did not explicitly specify a principle place of administration," and there was no contention that the decedent had a usual place of business in any other jurisdiction at the relevant times. *Id*.

At some point after the decedent's death, a dispute over the terms of the trust arose and the decedent's children, who were named trust beneficiaries, filed a petition in the probate court in

---

[4] Robert C. Erdman is the decedent's son.

[5] Unpublished opinions from this Court "are not binding, although they may be persuasive." *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 370; 986 NW2d 451 (2022).

Oakland County, Michigan, "seeking interpretation and instruction of the trust, as well as removal of JP Morgan Chase Bank, N.A. (JP Morgan), the successor trustee upon [the decedent's] death." *Id*. at 1-2. The decedent's surviving spouse, who was also a named trust beneficiary, "filed a limited appearance to challenge the probate court's exercise of jurisdiction, claiming that the principal place of administration of the Trust was in Florida." *Id*. The decedent's children maintained "that as successor trustee upon [the decedent's] death, JP Morgan validly transferred the principal place of administration of the Trust to Michigan, thus providing the Michigan probate court with subject-matter jurisdiction." *Id*. at 3.

This Court observed that both Michigan and Florida law defined a trust's principal place of administration to be, as relevant to the factual circumstances at issue, the trustee's residence, and this Court thus concluded that the trust's principal place of administration was Florida as of the time of the amendment and restatement because the decedent was the sole trustee and a Florida resident at that time. *Id*. at 2-3. This Court also concluded that at the time of the decedent's death, the trust's principal place of administration was in Florida where the decedent had continued to reside while remaining the sole trustee. *Id*. at 3. Florida statutory provisions required a trustee seeking to transfer a trust's principal place of administration to first provide notice to all qualified beneficiaries and suspended the trustee's authority to effectuate the transfer if one of those beneficiaries objected within 60 days. *Id*. JP Morgan did not provide this notice, and this Court therefore ruled that the trust's principal place of administration was not transferred and that the Michigan "trial court was without subject-matter jurisdiction to entertain [the children's] petition under MCL 700.7205." *Id*. at 3, 5. This Court reasoned that the successor trustee could not validly transfer the trust's principal place of administration without complying with the statutory notice requirements because there was no language in the trust instrument overriding the successor trustee's responsibility to comply with those statutory requirements. *Id.* at 3-5.

Here, during the decedent's lifetime, the decedent was the sole trustee and the trust's principal place of administration was in the county in Michigan where the decedent resided. *Id*. at 3. The trust indicates that the decedent was a resident of Kent County when the trust was established and that the trust is governed by Michigan law. It does not explicitly state the principal place of administration. It is not clear; however, which county would have been the principal place of administration at the time of the decedent's death; plaintiff alleged in his complaint that the decedent was at all times a resident of Kent County, yet plaintiff also claims that he lived with the decedent at the subject property in Wexford County before her death. Nonetheless, the co-trustees became the successor trustees after the decedent's death, pursuant to the terms of the trust. Under MCL 700.7108(4) and (5), the co-trustees were authorized to transfer the principal place of administration after providing notice to the qualified beneficiaries.

The language in MCL 700.7108(4) and (5) is similar in all material respects to the Florida statutory provisions relied on by this Court in *In re Seneker Trust*; both states' statutory provisions require the successor trustee to provide notice to qualified beneficiaries before transferring the trust's principal place of administration. Here, the probate court found that the successor co-trustees did not comply with the requirements of MCL 700.7108(4) and (5), which was necessary to effectuate a valid transfer of the principal place of trust administration to Cook County, Illinois; the probate court therefore erred by then dismissing plaintiff's action on the basis that the principal place of administration was in Cook County, Illinois. *In re Seneker Trust*, unpub op at 3-5.

Contrary to the approach of the probate court, the inquiry at this juncture is not whether plaintiff is a qualified beneficiary entitled to challenge a transfer of the principal place of administration; the relevant inquiry is whether a transfer of the principal place of administration already occurred such that venue could not lie in a county in Michigan or such that the probate court should have declined jurisdiction because the principal place of administration had validly been transferred to Illinois. Where there is no claim that the co-trustees provided the notice required by MCL 700.7108(4), pursuant to *In re Seneker*, it has not been demonstrated that the transfer of the principal place of administration was validly effectuated.[6] Thus, the probate court's interpretation of the relevant statutory provisions went beyond the plain language to include the probate court's view of how the statute *should* operate. *Dimmit & Owens*, 481 Mich at 624 ("When the language of a statute is unambiguous, the Legislature's intent is clear, and judicial construction is neither necessary nor permitted."). We therefore reverse the probate court's order and remand for further proceedings.

With respect to plaintiff's unpreserved argument regarding the proper remedy when venue is improper, this Court need not address this issue because it was not raised below and was thus waived. *Tolas Oil & Gas Expl. Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Furthermore, in light of the conclusions that the probate court erred by dismissing the action and that remand is necessary, there is no need for this Court to overlook the preservation requirements. *Id*.

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.19(A).

/s/ Stephen L. Borrello
/s/ Michael J. Riordan
/s/ Sima G. Patel

---

[6] The co-trustees argue merely that plaintiff was not personally entitled to notice.

-11-